PEPKA SPRING CO. *v.* JONES

[No. 2-276A84. Filed January 10, 1978. Rehearing denied February 6, 1978. Transfer denied July 27, 1978.]

---

*Michael V. Gooch, Harrison, Moberly & Gaston,* of Indianapolis, for appellant.

*Edgar W. Bayliff, Richard L. Russell, Bayliff, Harrigan, Cord & Maugans,* of Kokomo, *John M. Guy, Siferd, Roth, Christopher & Guy,* of Monticello, for appellee.

SULLIVAN, P.J.—The Industrial Board of Indiana entered an award granting Workmen's Compensation benefits to Jones on September 12, 1975. His employer, Pepka Spring Company, Inc. (Pepka), appeals the award as contrary to law. We have reviewed the evidence of record and the findings of the Board in light of the legal issues presented and find no error which requires reversal.

Jones was employed by Pepka when, on August 6, 1973, he received a laceration of the cornea of the right eye as a result of a fellow employee having hurled a spring at him. Pepka contends that this injury was an outgrowth of activity which is commonly called "horseplay" and which under certain circumstances relieve an employer from liability under the Indiana Workmen's Compensation Act, I.C. 22-3-2-2 (Burns Code Ed. 1971).[1]

Spring-throwing and other kinds of playful diversion had occurred over a period of time prior to the day of the accident. However, an outbreak of spring-throwing, which culminated in the injury, was particularly pervasive on that day.

The accident occurred at 3:30 in the afternoon. Shortly before he was injured, Jones had apparently thrown a spring at Michael Host, a co-employee. Jones then left his job to get a drink of water, after which he returned to his work station. While bending over to check the position of a cable which he was required to remove before commencing his assigned work he was hit by a spring thrown by Mr. Host. Jones admitted participation in spring-throwing shortly before, but whether he had thrown a spring at Mr. Host *immediately* prior to the accident was the subject of conflicting testimony.

Although the facts may be susceptible to opposing inferences, we must honor the findings of the Board when the inferences

---

1. A subsequent amendment is of no import to this decision.

drawn by the Board are reasonable and rest on competent evidence. *DeMichaeli & Associates v. Sanders* (1976), 167 Ind.App. 669, 340 N.E.2d 796, 803; *Lincoln v. Whirlpool Corp.* (1972), 151 Ind. App. 190, 279 N.E.2d 596, 598-599; *Woodlawn Cemetery Assn. v. Graham* (1971), 149 Ind. App. 431, 273 N.E.2d 546, 550. Therefore, Pepka's contention that the Board could not reasonably have concluded that Jones' injury arose out of his employment asks us to find as a matter of law that Jones was engaged in "horseplay" which resulted in his injury and which thus did not arise as a consequence of his work duties or incidental tasks related thereto.

This court has consistently denied compensation to an injured employee who actively participated in horseplay.[2] *Block v. Fruehauf Trailer Division, Fruehauf Corp.* (1969), 146 Ind. App. 70, 252 N.E.2d 612, 615; *see also Lincoln v. Whirlpool Corp., supra.* Our Courts have recognized, however, that:

> "It is a matter of common knowledge to employers of labor that men working together, or in near proximity to other workers, will indulge in moments of diversion from work to play pranks on each other; and where the duties of the employment require that an employe perform his work in a factory or mill with or near other workers, whether such workers are co-employes, or not, the risk from accident is thereby, to some extent at least, necessarily increased, and this increased risk is a risk of the employment. [Citations omitted]." *Chicago I. & L. Ry. Co. v. Clendinnin, supra,* 143 N.E. at 304.

*See also Woodlawn Cemetary Assn. v. Graham, supra,* 273 N.E.2d at 549; *Western Union Telegraph Co. v. Owens, supra,* 146 N.E. at 429; S. HOROVITZ, Modern Trends in Workmen's Compensation, 21 Ind. L.J. 473, 510-511.

In light of these recognized human frailties, it has been held

---

2.   The opposite result may be reached where, by reason of the employer's knowledge of, and acquiescence in, such conduct, horseplay becomes a condition incident to the employment. *In Re Loper* (1917), 64 Ind. App. 571, 116 N.E. 324. *See also Woodlawn Cemetery Assn. v. Graham, supra,* 273 N.E.2d at 548; *Delco-Remy Corp. v. Cotton* (1933), 96 Ind. App. 493, 185 N.E. 341, 342; *Western Union Telegraph Co. v. Owens* (1925), 82 Ind. App. 474, 146 N.E. 427, 429; *Chicago I. & L. Ry. Co. v. Clendennin* (1924), 81 Ind. App. 323, 143 N.E. 303, 304; *Kokomo Steel & Wire Co. v. Irick* (1923), 80 Ind. App. 610, 141 N.E. 796.

that injuries resulting from horseplay are caused by the employment so long as the injured person was an innocent victim.

*In Re Loper, supra,* 116 N.E. at 325; *Woodlawn Cemetery Assn. v. Graham, supra,* 273 N.E.2d at 549; *May Chevrolet Co. v. Armstrong* (1924), 82 Ind. App. 547, 146 N.E. 847. See generally, *Small, Workmen's Compensation Law in Indiana* § 6.9 (1950).

In the case before us, Jones admitted participation in general horseplay and in spring-throwing as well. But whether he induced response in his fellow worker to throw a spring by throwing a spring at the fellow worker immediately prior to the injurious incident was the subject of conflicting testimony. We defer to the Board's judgment in such matters. Therefore, we must view the evidence concerning Jones' participation from a standpoint supportive of the Board's award.

The Board's finding which recited that Jones had "returned to work" after having earlier thrown a spring at Mr. Host, is clearly indicative of a conclusion that even if Jones had been an aggressor or participant in horseplay, he had withdrawn from that aggression or participation. Thus, the Board was entitled to conclude as they must have, that Jones, like the claimant in *Woodlawn Cemetery Assn. v. Graham, supra,* had become "an innocent victim".

In this light then, the case before us is analogous to *Woodlawn Cemetery Assn. v. Graham, supra,* wherein a compensation award was affirmed as against employer's claim that the injured employee was participating in the horseplay. And in this light, our case must be distinguished from *Lincoln v. Whirlpool Corp., supra,* and *Block v. Fruehauf Trailer Division, Fruehauf Corp., supra,* wherein Board *denial* of compensation was affirmed notwithstanding factual similarity with the *Woodlawn* case.

Therefore, notwithstanding that upon the same facts, this Court may have reached a conclusion different than that reached by the Board here, we are obligated to affirm.

The decision and award of the Board is affirmed.

Buchanan, J. concurs.

White, J. dissents with separate opinion.

## DISSENTING OPINION

WHITE, J.—The facts found by the full board as recited in the prelude to its award of compensation to appellee Jones, Pepka's injured employee, are:

"That the parties stipulated that on August 6, 1973, plaintiff was an employee of the defendant; that on said date plaintiff sustained an injury to his right eye, which resulted in one hundred percent industrial blindness to that eye; that an agreement as to compensation was entered into between the parties, and approved by the Industrial Board on the 21st day of September, 1973; that pursuant to the agreement total temporary disability benefits were paid to plaintiff by defendant for a period of 17 weeks in the amount of $918; that thereafter those total disability benefits terminated pursuant to a disagreement between the parties as to whether or not plaintiff's accidental injury was the result of horseplay and whether or not it is compensable.

"The issue between the parties was whether or not a fellow employee, Michael Host, threw a spring that hit plaintiff in the right eye, causing his injury.

"It is further found that just prior to the injury the plaintiff threw a spring at Michael Host and then immediately returned to work and was working and had been for approximately three to five minutes when Michael Host threw a spring back at the plaintiff, hitting the plaintiff in the right eye and causing plaintiff's injury.

"It is further found that on August 6, 1973, plaintiff an employee of the defendant at an average weekly wage of $90.00; that on said date plaintiff sustained an accident and injury arising out of and in the course of his employment by the defendant, of which defendant had knowledge and has paid compensation to plaintiff for his temporary total disability at the rate of $54 per week for period of 17 weeks, beginning August 7, 1973, pursuant to an agreement as to such compensation approved by the Industrial Board on September 21, 1973.

"It is further found that as a result of said accident plaintiff sustained an injury to his right eye which resulted in one hundred percent industrial blindness to that eye, for which he has not been compensated.

"It is further found that defendant has not paid the statutory medical expenses resulting from said accident and injury.

"The Full Industrial Board of Indiana by a majority of its members now finds for the plaintiff and against the defendant on plaintiff's Form 9 application, filed herein on March 16, 1974."

The first paragraph of those findings is in substantial accord with the parties' oral stipulation, but the second paragraph, purporting to state the issue (i.e., whether Host threw a spring that caused Jones' injury) is not. Instead, the attorneys for the parties, Mr. Bayliff, for Jones, and Mr. Gooch for Pepka, stipulated as follows:

Mr. Bayliff:   I think, perhaps, Mr. Gooch would agree with me that what we are really fussing about here is whether or not this accident was caused by horseplay and whether or not, if it is was, horseplay makes it something which is not compensable.

Mr. Gooch:   Yes.

Mr. Bayliff:   Isn't that basically what we are fighting about?

Mr. Gooch:   Again, I think the question is, if the facts do establish horseplay as the cause of accident, whether the accident arose out of and in the course of employment.

Mr. Bayliff:   Or whether it was such a prevalent thing that it is a part of the employment.

The evidence itself discloses complete agreement that "fellow employee Michael Host threw a spring that hit plaintiff in the right eye, causing his injury." Both Host and Jones so testified and no one testified to the contrary.

The full board's findings show that Pepka's attorney was successful in establishing that plaintiff did throw a spring at Host and that Host threw one back at plaintiff. But the board made no finding indicating whether these springs were playfully thrown or maliciously thrown, possibly because it never occurred to any member that anyone would fail to understand that the whole thing was playful. But whether the throws were playing or fighting is irrelevant. An aggressor or willing participant in

either of these hazardous activities is ordinarily not entitled to compensations for injuries incurred therein. Only an innocent victim is entitled to compensation. Small, WORKMEN'S COMPENSATION LAW OF INDIANA, §§ 6.8, Assaults and 6.9, Horseplay; see also Rader's 1976 Supplement.

Horseplay cases and fighting cases have in common the rule that the injured workman cannot recover compensation unless he is an innocent victim. In the latest horseplay case it was held that "where the employee is found to have been '* * * actively engaged in the "horseplay" * * *', at the time of the injury, he will not be entitled to compensation." *Lincoln et al. v. Whirlpool Corp.* (1972), 151 Ind. App. 190, 198, 279 N.E.2d 596, 601.[1] Accord *Block v. Fruehauf Trailer Division Fruehauf Corp.* (1969), 146 Ind. App. 70, 252 N.E.2d 612.

In *Woodlawn Cemetery Association v. Graham* (1971), 149 Ind. App. 431, 273 N.E.2d 546, two fellow cemetery workers and Graham were on a work-break when he picked up a stone and flipped it about two or three feet from them. They started throwing stones at him. He crouched behind a tombstone and asked them to quit but they continued. He threw no rocks at them. he was hit in the eyes and blinded when he tried to come out from behind the tombstone. In affirming an award of compensation for the injury, the court distinguished *Block v. Fruehauf, supra,* on the ground that Block was actively engaged in horseplay and said:

"While we might question the logic and the theoretical basis for denying compensation to a participant . . . the issue is not presented in this appeal. The record . . . contains competent evidence to support what is implicit within the award, i.e., appellee Graham was an innocent victim." (149 Ind. App. at 435, 273 N.E.2d at 549.)

I have carefully searched the record at bar and fail to find any evidence (and no "finding") that appellee Jones was an innocent victim. On the contrary, there is ample evidence to sustain the full board's finding (ignored by the majority opinion) "that just prior to the injury the plaintiff [Jones] threw a spring at Michael

---

1. In *Lincoln* what started as horseplay wound up as a fatal shooting. The deceased employee's dependents were denied compensation.

Host." However, there is no evidence to sustain the further finding that Jones "then immediately returned to work and was working and had been for three to five minutes when Michael Host threw a spring back at the plaintiff." In that regard the only evidence is Jones' testimony that just before he was hit by the spring thrown by Host he had gone to get a drink and had just returned to his machine and bent over to look down in the trough when he was hit.

But if we accept that finding as being sustained by the evidence it means only that Jones was injured while at work, i.e., that his injury arose in the course of his employment, but not that it arose out of his employment. Since it was his throwing of a spring at Host which induced Host to throw one back at him, his injury arose out of his own prank, not out of his work. His return to work was not an intervening factor and did not break that simple chain of cause and effect. Nor does *Woodlawn v. Graham, supra,* furnish any basis for so holding. As that opinion states: "Graham threw no rocks at his fellow workers. . . ." (149 Ind. App. at 434.)[2]

I am puzzled by the majority's statement that:

"Jones admitted participation in general horseplay and in spring throwing as well. *Whether he induced response in his fellow worker to throw a spring by throwing a spring himself at the fellow worker immediately prior to the injurious incident was the subject of conflicting testimony.* We defer to the Board's judgment on such matters. Therefore we must view the evidence concerning Pepka's acquiescence and Jones' participation from a standpoint supportive of the Board's award." (My emphasis.)

That statement ignores the Board's finding "that just prior to the injury the plaintiff threw a spring at Michael Host and was working and had been for approximately three to five minutes when Michael Host threw a spring back at the plaintiff, hitting the plaintiff in the right eye and causing plaintiff's injury." Surely

---

2. My concurring opinion in that case is in error in suggesting that the majority's reason for finding Graham to be an innocent victim was "possibly because . . . he yelled for the others to stop the rock throwing he had initiated." (149 Ind. App. at 438.) I obviously overlooked the fact that the rock throwing Graham initiated was not directed at his fellow workers, as was Jones' spring throwing here.

that finding resolves whatever conflict there was in the evidence as to whether Jones induced Host to throw a spring at him.[3] And it is that finding (supported as it was by Host's testimony) to which we must defer rather than to the board's judgment, especially when that judgment is contrary to its findings.[4]

Because the facts found by the board do not sustain its award I would reverse and remand for further proceedings not inconsistent with the views herein expressed.

NOTE—Reported at 371 N.E.2d 389.

---

3. Jones did not deny throwing a spring at Host just prior to Host's throwing the injuring spring at him—he just did not remember doing so. Host said he did and the board so found.

4. *Cole v. Sheehan Construction Company* (1944), 222 Ind. 274, 281, 53 N.E.2d 172, 175.